IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA MAZZELLA,<br>      **Plaintiff** | : | No. 3:22cv1872 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| TROOPER MICHAEL PATRONE,<br>TROOPER ERIN KINGSLEY,<br>CORPORAL CHRISTIAN SALDIBAR,<br>CAPTAIN NORMAN CRAMER,<br>LIEUTENANT JOSEPH SPARICH, and<br>LIEUTENANT DEVON BRUTOSKY,<br>      **Defendants** | :<br>:<br>:<br>:<br>:<br>: | |

............................................................................................................

## MEMORANDUM

Plaintiff Andrea Mazzella filed this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against six (6) members of the Pennsylvania State Police, Defendants Michael Patrone, Erin Kingsley, Christian Saldibar, Norman Cramer, Joseph Sparich, and Devon Brutosky for the alleged use of excessive force. Before the court is the defendants' partial motion to dismiss plaintiff's amended complaint for failure to state a claim. Having been fully briefed, the motion is ripe for a decision.

## Background

This action arises out of a one-vehicle accident involving the plaintiff on November 29, 2020 along Interstate 380 in Monroe County, Pennsylvania.[1] (Doc. 14, Am. Compl. ¶¶ 15-16). Plaintiff crashed into a guardrail and struck his head upon impact. (Id. ¶ 17). Dazed, he drove a short distance before eventually stopping alongside the highway. (Id. ¶ 18).

Defendant Patrone responded to the crash as a trooper for the Pennsylvania State Police. (Id. ¶ 19). Per plaintiff, "[w]ithin forty-seven seconds of arriving, rather than rendering aid to [p]laintiff, Defendant Patrone smashed [p]laintiff's car window with his baton and said, 'Get out of the car, or I'm gonna bust you up and put you on the ground.' " (Id. ¶ 20).

Plaintiff complied and exited the vehicle, but then fled because he felt threatened by Defendant Patrone's aggressive actions, words, and demeanor. (Id. ¶ 22). Defendant Patrone chased and tackled plaintiff to the ground and beat plaintiff with closed fists, striking the plaintiff in the face, head, and other parts of his body. (Id. ¶¶ 23-25). Plaintiff alleges that he took no aggressive or violent action toward Defendant Patrone, other than putting his hands in front of

---

[1] These background facts are derived from plaintiff's amended complaint. At this stage of the proceedings, the court must accept all factual allegations as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

his face to stop the punches being thrown by the trooper. (Id. ¶ 26). Per plaintiff, Defendants Kingsley and Saldibar arrived on scene and allowed the beating to continue. (Id. ¶ 32).

The amended complaint alleges that Defendant Patrone continued battering plaintiff until he lost consciousness. (Id. ¶ 27). Plaintiff also sustained multiple facial fractures.[2] (Id. ¶ 30). Per plaintiff, he also sustained a right traumatic subdural hematoma, left subarachnoid hemorrhage, and two rib fractures. (Id.) Medical personnel had to transport plaintiff from the scene to a hospital by helicopter. (See id. ¶ 28). Plaintiff alleges that he has been left with permanent cognitive impairment and disfigurement. (Id. ¶ 31).

Per plaintiff, prior to this incident, Defendant Patrone had received numerous excessive force complaints, had been the subject of internal investigations regarding the same, but continued to be employed by the Pennsylvania State Police. (Id. ¶ 48). Plaintiff asserts that Defendants Kingsley, Saldibar, Cramer, Sparich, and Brutosky supervised Defendant Patrone and knew of the danger he posed to the public from past incidents of excessive force. (Id. ¶¶ 47-48, 50). As alleged, these defendants all possessed the power to

---

[2] Specifically, plaintiff alleges that he sustained: 1) a LeFort type II facial fracture; 2) fractures of the anterior lateral and posterior wall of the left maxillary sinus; 3) a fracture of the left mandibular condyle; 4) a fracture of the orbital floor; and 5) a comminuted nasal fracture. (Doc. 14, Am. Compl. ¶ 30).

terminate Defendant Patrone and/or restrict his duties. (Id. ¶ 49). Plaintiff avers further that, despite this knowledge, these defendants continued to allow Defendant Patrone to perform public-facing duties without monitoring at the risk of individuals like the plaintiff. (See id. ¶ 51).

Plaintiff faced numerous criminal charges stemming from the encounter with Defendant Patrone. All charges, however, were filed by Defendant Kingsley. (See id. ¶ 34). First, on November 29, 2020, Kingsley filed charges against plaintiff for: 1) aggravated assault; 2) simple assault; 3) recklessly endangering another person; 4) resisting arrest; and 5) harassment ("the aggravated assault docket"). (Id. ¶ 35). Per the amended complaint, authorities denied plaintiff bail on these charges until April 1, 2022 when bail was made unsecured. (Id. ¶ 36). Accordingly, plaintiff was incarcerated for approximately one year on these charges. (Id.). Second, on July 16, 2021, Defendant Kingsley filed charges against plaintiff for driving under the influence ("DUI") and for state Vehicle Code violations ("the DUI docket"). (Id. ¶ 37). Plaintiff alleges that he ultimately pled guilty to DUI and recklessly endangering another person relative to the DUI docket. (Id. ¶ 42). Plaintiff did so because "he had marijuana in his system, and any amount of marijuana in your system – regardless of whether or not it impairs you or you are prescribed it – is technically unlawful when driving under Pennsylvania Statute." (Id. ¶ 43). Per plaintiff, "[t]he sole factual basis" for his

plea was "that he drove when there was some amount of marijuana in his system." (Id. ¶ 44). Plaintiff was sentenced to time served on the DUI docket. (Id. ¶ 45).

Returning to the aggravated assault docket, plaintiff asserts that Defendant Kingsley included lies in the affidavit of probable cause, including that plaintiff was violent during the incident, in an effort to shield Defendant Patrone from liability. (Id. ¶¶ 38-40). Plaintiff also alleges that Defendant Patrone lied to Defendant Kingsley and those lies made their way into the affidavit. (Id. ¶ 41). Plaintiff asserts that probable cause was thus lacking for any of the charges related to the aggravated assault docket. (Id. ¶ 38).

Relative the above allegations, the amended complaint contains the following Section 1983 claims in violation of plaintiff's Fourth and Fourteenth Amendment rights:

- Count One - Excessive Force (against Defendant Patrone);

- Count Two - Failure to Protect (against Defendants Kingsley, Saldibar, Cramer, Sparich, and Brutosky);

- Count Three – False Arrest (against Defendants Patrone and Kingsley)

- Count Four – Malicious Prosecution (against Defendants Patrone and Kingsley)

Additionally, the amended complaint contains several state common law claims:

5

- Count Five - Assault (against Defendant Patrone);

- Count Six – Battery (against Defendant Patrone)

- Count Seven – Malicious Prosecution (against Defendants Patrone and Kingsley)

Defendants responded to the amended complaint with the partial motion to dismiss. (Doc. 16). In essence, the defendants argue that all claims except for the excessive force claim should be dismissed with prejudice for failure to state a claim or based on sovereign immunity. The parties fully briefed their respective positions bringing this case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to Section 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted). Furthermore, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben.

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted). A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. (citations omitted). Defendants attach three exhibits to the motion to dismiss regarding the aggravated assault docket: 1) the November 29, 2020 criminal complaint, (Doc. 17-1); 2) the docket sheets at the magisterial district court level, (Doc. 17-2); and 3) the docket sheets at the court of common pleas level, (Doc. 17-3). Because plaintiff's false arrest and malicious prosecution claims are based on the charges reflected in these documents and these documents are matters of public record, the court will consider these exhibits along with the parties' arguments.

**Analysis**

Defendants assert three primary arguments in support of dismissal of all claims other than plaintiff's Section 1983 claim for excessive force against Defendant Patrone. First, they argue that the false arrest and malicious prosecution claims should be dismissed because the plaintiff's arrest was supported by probable cause. Second, they assert that the state law claims of assault and battery should be dismissed because Defendant Patrone is entitled to sovereign immunity. Third, the defendants argue that the failure to protect

claim should be dismissed due to lack of personal involvement by Defendant Patrone's supervisors. The court will address these arguments in turn.

**1. False Arrest and Malicious Prosecution**

Count Three asserts a Section 1983 claim for false arrest against Defendants Patrone and Kingsley. The Fourth Amendment provides that people are "to be secure in their persons...against unreasonable...seizures and no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV. The Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F. 3d 480, 482 (3d Cir. 1995)(citation omitted). Thus to succeed in his false arrest claim, the plaintiff must demonstrate that he was arrested without probable cause. See James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012)(citing Groman v. Twp. of Malalapan, 47 F.3d 626, 634 (3d Cir. 1995) (further citation omitted).

Count Four asserts a Section 1983 claim for malicious prosecution against Defendants Patrone and Kinglsey for the charges on the aggravated assault docket. To succeed on that claim, a plaintiff must demonstrate, among other things, that the defendants initiated the proceeding without probable cause. See Est. of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).[3] Thus, the existence

---

[3] This is the third element of a malicious prosecution claim. The other elements are: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor...(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to

of probable cause would spell the end of plaintiff's Section 1983 claims of false arrest and malicious prosecution and defendants seek an early ruling on this issue with the motion to dismiss.

"The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' and it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.' " United States v. Donahue, 764 F.3d 293, 301 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 230–31 (1983)). In a Section 1983 action, the existence of probable cause is generally a factual question to be resolved by a jury, particularly where such a determination rests on credibility. See Groman, 47 F.3d at 635; Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788-89 (3d Cir. 2000). Based on the allegations, the law precludes probable cause determinations at this juncture.

Defendants, nonetheless, attack the false arrest and malicious prosecution claims based on the underlying criminal proceedings, arguing that the magisterial district court judge approved an arrest warrant and the plaintiff waived his preliminary hearing before that judge. (Doc. 17, Defs. Br. in Supp. at 7-8 (citing Doc. 17-1, Police Criminal Compl., Doc. 17-2, MDJ Docket Sheets)). Defendants also assert that plaintiff's petition for a writ of habeas corpus in the Court of

---

justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding. See Est. of Smith, 318 F.3d at 521

Common Pleas was denied, and his criminal case was placed on the trial list prior to charges being withdrawn. (Id. (citing Doc. 17-3, CP Docket Sheets)). Consequently, the defendants argue "on at least two occasions…an independent judicial officer determined that the prosecution had sufficient probable cause to try [p]laintiff for the charges initiated by Trooper Kingsley." (Id. at 8).

These arguments are unpersuasive. "An arrest warrant 'does not, in itself, shelter an officer from liability for false arrest.'" Reedy v. Evanson, 615 F.3d 197, 213 (3d Cir. 2010)(quoting Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000)). Plaintiff can succeed on his action for false arrest made pursuant to a warrant if he demonstrates, by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. See id. (quoting Wilson, 212 F.3d at 786–87).

Plaintiff alleges in his amended complaint that he "took no aggressive or violent action toward Defendant Patrone whatsoever other than throwing his hands up in front of his face in an attempt to stop Defendant Patrone's brutal onslaught." (Doc. 14, Am. Compl. ¶ 26). On the other hand, Trooper Kingsley's affidavit of probable cause states that plaintiff "scratched at [Defendant] Patrone's face mouth [sic] and punched him in the throat." (Doc. 17-1, ECF p. 8

(capitalization removed)).  The affidavit also states that a non-party Emergency Medical Technician ("EMT") assisted Defendant Patrone in placing plaintiff in handcuffs along with another state trooper. (Id.)  The EMT began to assist Defendant Patrone as Patrone "had one of [plaintiff's] arms in a handcuff, but the [plaintiff] was continuing to swing the other hand at [Defendant] Patrone, striking him." (Id.)

These are two divergent narratives and plaintiff's averments are assumed to be true at this posture.  Moreover, "[t]he common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to section 1983 actions." Merkle, 211 F.3d at 789.  Thus, the magisterial district court judge's approval of the arrest warrant does not necessitate dismissal of plaintiff's false arrest and malicious prosecution claims.

Furthermore, plaintiff's waiver of his preliminary hearing and his later unsuccessful habeas corpus petition before the Monroe County Court of Common Pleas are not fatal to the false arrest and malicious prosecution claims. In Pennsylvania, the purpose of a preliminary hearing is to determine whether the Commonwealth has made a *prima facie* case for the offenses charged. Commonwealth v. Ouch, 199 A.3d 918, 923 (Pa. Super. Ct. 2018)(citation omitted).  Defendants also indicate that plaintiff used a habeas corpus petition to

later challenge the Commonwealth's *prima facie* case. Regarding the required showing:

> The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury.
>
> The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged.
>
> Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense.
>
> Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

Commonwealth v. Marti, 779 A.2d 1117, 1180 (Pa. Super. Ct. 2001)(citations, quotation marks, and brackets omitted)(formatting modified).

But even when a probable cause determination has been made by a Pennsylvania court in determining whether a *prima facie* case exists, that finding is not conclusive of the probable cause issue but is to be considered "[a]s affirmative evidence. . . along with all of the other evidence offered by the parties on the issue of probable cause." Cosmas v. Bloomingdales Bros. 484, 660 A.2d 83, 87 (Pa. Super. Ct. 1995)(holding that a determination of a *prima facie* case does not necessarily equal a finding of probable cause such as will bar an action

13

for malicious prosecution). A *prima face* determination "will oftentimes barely scratch the evidentiary surface of a case." Id. at 86 (citation omitted). Similarly, a fuller record is necessary in this case to consider the issue of whether the state troopers had probable cause for the charges on the aggravated assault docket. Accordingly, the court will reject the defendants' arguments that a *prima facie* showing in an underlying criminal case is dispositive of the issue of whether there was probable cause when the accused later pursues a Section 1983 action for false arrest and malicious prosecution.

One last matter remains regarding the Section 1983 malicious prosecution claim in Count Four. Defendants argue that Count Four as raised against Defendant Patrone should be dismissed because Defendant Kingsley filed charges against the plaintiff.[4] The first element of a Section 1983 malicious prosecution claim is that the defendant initiated a criminal proceeding. See Est. of Smith, 318 F.3d at 521. Defendants offer no case interpreting the word "initiate" as part of a Section 1983 claim in a federal court and the court's research has uncovered none directly on point. See Carney v. Pennsauken Twp. Police Dep't, No. CIV. 11-7366 RBK/JS, 2013 WL 2444043, at *3 (D.N.J. June 3, 2013)(reaching the same result and looking to New Jersey common law

---

[4] Defendants did not specifically challenge plaintiff's state common law claim for malicious prosecution raised in Count Seven of the amended complaint against both Defendant Patrone and Defendant Kingsley.

14

malicious prosecution cases interpreting that element). Pennsylvania law permits the common law tort of malicious prosecution to be extended to private citizens when they initiate or procure proceedings without probable cause. See Hess v. Lancaster Cnty., 514 A.2d 681, 683 (Pa. Super. Ct. 1986) (citing RESTATEMENT (SECOND) OF TORTS § 653). Absent a clear statement of law holding that Section 1983 malicious prosecution claims are limited only to a police officer instituting the charges, defendants' arguments fall short.

Moreover, in this case, the charges on the aggravated assault docket hinge on matters only observed from a law enforcement perspective by Defendant Patrone. Based on the affidavit of probable cause submitted by the defendants, approximately seven (7) minutes elapsed from Defendant Patrone's arrival at the scene to Defendant Kingsley's assignment to the assault investigation. (Doc. 17-1, ECF p. 8). The affidavit of probable cause thus raises multiple questions to be resolved in discovery regarding what Defendant Patrone relayed to Defendant Kingsley after Defendant Kingsley arrived at the scene and what the troopers discussed before Defendant Kingsley sought charges. A reasonable inference can be made from the allegations and the affidavit of probable case that the aggravated assault charges were instituted with input from Defendant Patrone as to the events on scene. Under the facts alleged in this case, the court will not

limit plaintiff's Section 1983 malicious prosecution claim only to Defendant Kingsley. Thus, the motion to dismiss will be denied.

### 2. Assault and Battery

Defendants next argue that Defendant Patrone is entitled to sovereign immunity on plaintiff's state law claims for assault and battery (Counts Five and Six) because he was acting as an employee of the Commonwealth within the scope of his employment. (Doc. 17, Defs. Br. in Supp. at 16-17). Plaintiff counters that whether Defendant Patrone was acting within the course and scope of his employment duties remains a factual issue that cannot be resolved as a matter of law. (Doc. 18, Pl. Br. in Opp. at 12-13). The court agrees with plaintiff.

"Subject to certain exceptions, sovereign immunity shields Commonwealth employees acting within the scope of their duties from liability for tortious conduct." Justice v. Lombardo, 208 A.3d 1057, 1059 (Pa. 2019)(citing 1 PA. CONS. STAT. § 2310; 42 PA. CONS. STAT. §§ 8521-22). And in state court excessive force cases against state troopers with claims for assault and battery, "whether [a state trooper's] actions were within the scope of employment depends on the nature of his job; how, when and why he acted as he did; and the extent to which the [Pennsylvania State Police] might expect him to use force under the circumstances." Id. at 1060, 1067–68 (discussing RESTATEMENT

16

(SECOND) OF AGENCY §§ 228-235).  Under Pennsylvania law, this is ordinarily a question of fact for the jury. Id. at 1068 (citations omitted).

Furthermore, as plaintiff indicates, the other defendants may eventually argue that Defendant Patrone's actions fell outside the scope of his employment to avoid liability and Defendant Patrone himself may argue the same to avoid Section 1983 liability.  In those instances, plaintiff argues, he would be left without potential avenues of recourse.  Accordingly, plaintiff advises that he advances the state law claims for assault and battery in the alternative based on the critical question of whether Defendant Patrone acted within the course and scope of his employment.  Pursuant to the Federal Rules of Civil Procedure, such alternative claims are permitted, FED R. CIV. P. 8(d)(2), and thus the motion to dismiss will be denied.

### 3. Personal Involvement

Finally, defendants argue that plaintiff's Section 1983 failure to protect claim must be dismissed against Defendants Kingsley, Saldibar, Cramer, Sparich, and Brutosky for insufficient allegations of their personal involvement. (Doc. 17, Defs. Br. in Supp. at 13-14).

In Section 1983 actions, a plaintiff must plausibly plead facts that demonstrate a defendant's personal involvement in the alleged misconduct and cannot rely solely on a *respondeat superior* theory of liability. See Dooley v.

Wetzel, 957 F.3d 366, 374 (3d Cir. 2020)(citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Pleading personal involvement requires particular allegations of personal direction or of actual knowledge and acquiescence. Id.; see also Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

As for Defendants Kingsley and Saldibar, plaintiff alleges that they arrived on scene "during Defendant Patrone's beating of [p]laintiff and allowed the beating to occur, failing to protect [p]laintiff when they knew he was being unlawfully attacked." (Doc. 14, Am. Compl ¶ 32).  Moreover, plaintiff alleges many of his injuries occurred "by virtue of [Defendants Kingsley and Saldibar's] failure to intervene and protect [p]laintiff from Defendant Patrone's brutal and unjustified attack." (Id. ¶ 33).  The amended complaint thus includes allegations of direct wrongful conduct by Defendants Kinglsey and Saldibar and the motion to dismiss will be denied as to these defendants.

As for Defendants Cramer, Sparich, and Brutosky, plaintiff identifies Cramer as a captain and Sparich and Brutosky as lieutenants.  Defendants Sparich and Brutosky thus commanded a state police station and Defendant Cramer commanded a troop of multiple stations. Additionally, per plaintiff,

Defendant Patrone was the subject of "numerous" excessive force complaints and had been the subject of internal investigations regarding same. (Id. ¶¶ 48-49). Reasonable inferences can be drawn that the lieutenants of Defendant Patrone's station or stations and the captain of Defendant Patrone's troop would have awareness of prior alleged incidents of excessive force and the authority to address any concerns. Plaintiff has thus pled plausible claims against these ranking members of the Pennsylvania State Police. The details of these alleged prior incidents and investigations and the precise level of Defendants Cramer, Sparich, and Brutosky's knowledge and involvement can be explored in discovery. Consequently, the motion to dismiss will be denied.

**Conclusion**

For the reasons set forth above, defendants' partial motion to dismiss (Doc. 16) will be denied. An appropriate order follows.

Date: 8/23/24

JUDGE JULIA K. MUNLEY
United States District Court